**CIVIL RIGHTS COMPLAINT**
**42 U.S.C. § 1983**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x

HART and FRANKLIN, CO
Full name of plaintiff/prisoner ID#

                    Plaintiff,

          -against-

THE Capitol, et al,
_____

Enter full names of defendants
[Make sure those listed above are
identical to those listed in Part III.]

                    Defendants.
--------------------------------------------------x

IN ___ ___ CE
US DISTRICT COURT ___ D.N.Y.

★   OCT 0 7 2013   ★

BROOKLYN OFFICE

JURY TRIAL DEMAND
YES ___/___    NO _____

**CV-13 5654**

**BIANCO, J.**

**LINDSAY, M.**

I.        Previous Lawsuits:

          A.        Have you begun other lawsuits in state or federal court
                    dealing with the same facts involved in this action or
                    otherwise relating to your imprisonment?  Yes (✓) No ( )

          B.        If your answer to A is yes, describe each lawsuit in the space below
                    (If there is more than one lawsuit, describe the additional lawsuits
                    on another piece of paper, using the same outline.)

                    1.  Parties to this previous lawsuit:

                         Plaintiffs:   KEON ASKEEA HART SR
                         _____

                         Defendants:  Commissioner of Internal
                                       Revenue
                         _____

                    2.  Court (if federal court, name the district;
                         if state court, name the county)  Oneida
                         _____

                    3.  Docket Number:  9:13 Civ 1171 (LEK/DEP)

1

4. Name of the Judge to whom case was assigned: _LEK / DEP_

5. Disposition: (for example: Was the case dismissed? Was it appealed? Is it still pending?) _28 USC 1915_

6. Approximate date of filing lawsuit: _9-20-13_

7. Approximate date of disposition: _9-23-13_

II.   Place of Present Confinement: _MID-STATE CORR. FACILITY_

A.  Is there a prisoner grievance procedure in this institution? Yes (✓) No ( )

B.  Did you present the facts relating to your complaint in the prisoner grievance procedure? Yes (✓) No ( )

C.  If your answer is YES,

1.  What steps did you take? _INMATE GRIEVANCE COMPLAINT 4040 SEC. 701.6 (g)_

2.  What was the result? _PENDING DISPOSITION_

D.  If your answer is NO, explain why not _____

_____

E.  If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes (✓) No ( )

F.  If your answer is YES,

1.  What steps did you take? _IDENTITY THEFT COMPLAINT SEE (DOJ FOI PA)_

2.  What was the result? _PENDING RESPONSE_

III.   Parties:

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff *HART AND FRANK LiN, CO.*

Address *41 RoEBLiNG ST. BFLO 14215*
*(716) 894-5795*

(In item B below, place the full name and address of each defendant)

B. List all defendants' names and the addresses at which each defendant may be served. Plaintiff must provide the address for each defendant named.

Defendant No. 1            *SEE ATTACHED #*
*1:013 CiV04080 (FE)*
*pp. 2 oF 11 — 3 oF 11*

Defendant No. 2            *SAME*

Defendant No. 3            *SAME*

Defendant No. 4            *SAME*

Defendant No. 5            *SAME*

[Make sure that the defendants listed above are identical to those listed in the caption on page 1].

IV.     Statement of Claim:

(State briefly and concisely, the facts of your case. Include the date(s) of the event(s) alleged as well as the location where the events occurred.  Include the names of each defendant and state how each person named was involved in the event you are claiming violated your rights.  You need not give any legal arguments or cite to cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  You may use additional 8 ½ by 11 sheets of paper as necessary.)

SEE ATTACKED PP. 4 OF 11 - 50 OF 11

IV. A     If you are claiming injuries as a result of the events you are complaining about, describe your injuries and state what medical treatment you required.  Was medical treatment received?

SEE ATTACKED IV ABOVE.
SAME

4

V.    Relief:

State what relief you are seeking if you prevail on your complaint.

SEE ATTACHED P.P. 4 OF 11

I declare under penalty of perjury that on  9-30-13 , I delivered this
                                              (Date)
complaint to prison authorities to be mailed to the United States District Court for the Eastern

District of New York.

Signed this  30  day of  September , 20 13 .  I declare under penalty of

perjury that the foregoing is true and correct.

Kean K. Hart
Signature of Plaintiff

MID-STATE CORR FACILITY
Name of Prison Facility

P.O. BOX 2500
MARCY NEW YORK 13403-0216
(315) 768-8581
Address

SSA# 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
Prisoner ID#

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

19 @ APRIL

www. nysd. us courts.gov//httm

2120 U.S. Courthouse ▬▬▬▬▬▬ DANIEL PATRICK MOYNIHAN
1 00 State Street ★ ▬▬▬▬▬▬ 500 Pearl St.
ROCHESTER , 14614 ▬▬▬▬▬▬ N.Y.C. 10007-1312
(585)613-4000 ▬▬▬▬▬ (631) 712-6000

August 2ⁿᵈ, 2013

KEON, ASKEEA HART, INC.

Plaintiff,        1:013-cv-04080 (FE)

12 V. 11

MID-STATE
C/O SEETON,
EXECUTIVE CHAMBER, et al,
THE CAPITOL
ALBANY 12226
                    DEFENDANT(S).

THIS ACTION IS BROUGHT PURSUANT TO: 12 of 11

42 USC 1983 et. seq. 80-81, 2000(d) AND
3789d(c); UNDER TITLE VI AND THE SAFE
STREETS CIVIL RIGHTS ACT OF 1964 AND 1968.
THE OMNIBUS CRIME CONTROL

Case 2:13-cv-05654-JFB-ARL Document 1 Filed 10/07/13 Page 7 of 59 PageID #: 7

EASTERN DISTRICT OF NEW YORK

www.nysd.uscourts.gov

PROHIBITS DISCRIMINATION ON THE BASIS OF
RACE, COLOR, NATIONAL ORIGIN, SEX, OR RELIGION
BY LAW ENFORCEMENT AGENCIES THAT RECIEVE
FEDERAL FUND'S. (MOTHER OF GOD)

28 USC 1346(b): VEST FEDERAL COURTS WHITH
ELCLUSIVE JURISDICTION OF TORT "WHERE THE
UNITED STATES, IF A PRIVATE PERSON, WOULD BE
LIABLE TO THE CLAIMANT IN ACCORDANCE
WITH THE LAW OF THE PLACE WHERE THE
ACT OR OMISSION OCCURRED" BIRN BAUM, 588 F.2d. at
327-28 (8TH CIR. 2003)

CLASS ACTION: GLENESE FRANKLIN
208 HEATH STREET
BUFFALO, 14214
(716)

PERRY T. HART, SR.
634 FORDSVILLE RD.
BRIDGETON, 08302
(856)

Perry T. Hart, JR.®
300 LACKAWANA St, APT #
READING, 19601

KENYLA Angela HART
15 C TRENT SQUARE
2 of 11

UNITED STATES DISTRICT COURT

EASTER DISTRICT OF NEW YORK

www.nysd.uscourts.gov
BUFFALO, 14225
(716)

KEON R HART, JR.
15C TRENT SQUARE
BUFFALO, 14225
(716)

Official Capacity: MID-STATE C/O SEXTON,
9005 OLD RIVER ROAD, BOX 216
13403-0216

THE GOVERNOR
ALBANY, 12226

Parties to the Action: UNITED STATES POSTAL Office·®
THE LABOR Dept.
DEPARTMENT OF CORRECTION AND
Community Supervision

HEALTH AND HUMAN SERVICE'S DEPT.

DEPARTMENT OF SOCIAL SECURITY

DEPARTMENT OF JUSTICE
WASHINGTON, 20530

COUNTY ATTORNEY

3 of 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

www.nysd.US courts.gov
MAYOR OF THE CITY OF BUFFALO

DEPARTMENT OF THE TREASURY

NEW YORK METRO LAW OFFICE

AMERICAN CIVIL LIBERTIES UNION

EVA FRANKLIN
LONNIE ® FRANKLIN, SR.
BUFFALO, NY 14

EXHAUSTION OF REMEDIES: UNITED STATES OF AMERICA
PUBLIC HEALTH AND WELFARE + OTHER LAW(S) AND TREATIES
OF THE UNITED STATES, 1776 ®.

ACTION'S FILED: CORPUS JURIS SECUNDUM 11:59 PM
U.S.P® 7006-2760-0004-8772-9373 August 2ND 2013

| ERIE COUNTY | NYWD | ADMITED SS# |
|---|---|---|
| 02191-2007 | 07-CV-06607 | 0131-66-84450 |
| 2006 | DEC. 10TH 2007 | APRIL ® 1980 |
| | NYSID: 08370675K | |

CLAIM 1: DISCRIMINATION UNDER TITLE VI CIVIL RIGHTS
ACT -601. FIFTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AGAINST SELF-INCRIMINATION
AND EMPLOYMENT DISCRIMINATION.

4 of 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

www.nysd.us courts.gov//httm

CLAIM 2: 1ST AMENDMENT TO THE UNITED
STATES CONSTITUTION FREEDOM OF
RELIGION, FREE SPEECH, PRIVACY, et al.
and EQUAL ACCESS TO UNITED
STATES POSTAL OFFICE®

CLAIM 3: FOURTH AMENDMENT to THE UNITED
STATES CONSTITUTION TO BE SECURE
IN PERSON, HOUSE, AND EFFECTS
AGAINST UNREASONABLE SEARCHES
AND SEIZURES, et al.

RELIEF % AMOUNT DEMANDED:

$5,000,000,000.00

0 — RESTRAINT(S) — 0

CIVIL PENALTIES, TAXATION, ADMINISTRATIVE
REMEDY AND PUNITIVE DAMAGES FOR THE
DENIALS AND ABUSE OF DISCRETION
AGAINST THE PLAINTIFF(S). ORDERS OF PROTECTION
AND ARRAIGNMENT FOR R.I.CO. FRAUD (TITLE 18
UNDER 39 U.S.C) FORGERY AND PERJURY VIOLATION(S).
Pro Se                  28 USC 1746

Keon A. Hart®, ESQ.
825 GLENWOOD
BUFFALO, 22ND @ 80
5 of 11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



KEON A. HART,

                              Plaintiff,

*Ce v. 11*

CAPT. OFFICER MICHAEL McCARTHY, et al,                **ADR REFERRAL ORDER**

                                                      07-CV-6607 A

                              Defendants.

After due consideration, the Court finds that this case is appropriate for referral to alternative dispute resolution as provided in Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York (the ADR Plan). A copy of the ADR Plan and related forms and documents can be found at http://www.nywd.uscourts.gov or obtained from the Clerk's Office.

IT HEREBY IS ORDERED, that this case is referred to mediation.

FURTHER, that **ADR Program Administrator Barry L. Radlin** will serve as Mediator for this case.

FURTHER, that the contact information to be used for the Mediator is: **United States Courthouse, 2 Niagara Square, Buffalo, NY 14202; barry_radlin@nywd.uscourts.gov., (716) 551-1511.**

FURTHER, that the Clerk of the Court shall mail to plaintiff and to plaintiff's counsel, together with a copy of this Order, a copy of the ADR Plan.

1

FURTHER, that the initial mediation session shall be held no later than **May 15, 2012 at the United States Courthouse in Buffalo, New York.** If the plaintiff is currently incarcerated, his participation will be by telephone or by video conference, depending upon the arrangements able to be made with the correctional facility. Counsel for the defendants is directed to cooperate with plaintiff's counsel in notifying the correctional facility of the date and time of the mediation session to ensure that the plaintiff is provided with communications access and his legal papers relative to this action.

FURTHER, that the date, time and specific location within the United States Courthouse for the initial mediation session shall be fixed by way of communications with Mediator Barry L. Radlin

FURTHER, that not less than seven calendar days before the initial mediation session, the parties are to exchange, in writing, specific settlement demands and offers, with copies provided to the Mediator and, if necessary, using the Mediator for the exchange of said demands and offers.

FURTHER, that not less than seven calendar days before the initial mediation session, each party shall provide the Mediator with a memorandum in accordance with Section 5.6 of the ADR Plan.

FURTHER, that the Mediator shall encourage and assist the parties in reaching a resolution to their dispute, but may not compel or coerce the parties to settle.

FURTHER, that pursuant to Section 5.10 of the ADR Plan, information disclosed during the mediation session shall remain confidential, and shall not be made known to any

2

other party or this Court, without consent of the disclosing party. The Mediator shall not be called as a witness, nor may the Mediator's records be subpoenaed or used as evidence.

FURTHER, that within ten days of the close of each mediation session, the Mediator shall file a form "Mediation Certification" provided by the Court reciting whether the case has settled and, if not, whether mediation will continue.

FURTHER, that this referral shall terminate on **May 31, 2012.**

SO ORDERED.

Dated:      March __8__, 2012
            Buffalo, New York

                                    _Richard J. Arcara_
                                    HONORABLE RICHARD J. ARCARA
                                    United States District Judge

# TPC Training Systems
### The Industrial Skills Training Specialists

Dear Customer:

The Series Completion Certificates you ordered recently are enclosed.  Please take a moment to make sure there are no errors in your organization's name (two places), the recipient's name, the series title, or the date.  If you find any errors, please contact our Certification Department at 1-800-808-4000, to order a replacement.  Also enclosed is a blank form for ordering additional certificates when you need them.

Before presenting each certificate to the employee, sign it for your organization in the space provided.

Successfully completing a course of study is an important event in the life of each trainee.  Presenting the trainee with a certificate recognizes the importance of that success and can be a powerful influence in motivating the trainee to continue making progress in the training program and on the job.  Mounting the certificate in a simple frame enhances its appearance.



Many organizations increase the motivating effect of the certificates by having an officer of the organization present them at a special awards ceremony. We recommend such a ceremony as an integral part of your training program.

Thank you for giving us the opportunity to serve you in your training program.  Please congratulate each of your trainees for us when you present them with their certificates.

Cordially,

Andrew Kauser
Manager
Instructional Design
and Development Group
Telemedia, Inc.

A division of Telemedia, Inc.

Keon A. Hart 08-B-1749
CENTRAL NEW YORK PSYCHIATRIC CENTER
P.O. Box 300
Marcy, NY 13404

---------------------------------------------------------

⅄ v. 11

## Other Orders/Judgments

6:07-cv-06607-CJS-JWF Hart v. McCarthy et al

CASREF, ProSe

### U.S. DISTRICT COURT

#### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 10/7/2010 at 11:43 AM EDT and filed on 10/7/2010

**Case Name:**     Hart v. McCarthy et al
**Case Number:**   6:07-cv-06607-CJS-JWF
**Filer:**
**Document Number:** 46

**Docket Text:**
**DECISION AND ORDER re [35] MOTION to Change Venue filed by M. White, S. Alvarez, E. Perrin, Michael McCarthy, J. Mayhook, T. Dolan. ORDERED, that Defendants motion (Docket No. 35) to transfer venue is granted; and it is furtherORDERED, that the Clerk transfer this case to the Buffalo division of the Western District of New York; and it is furtherORDERED, that the referral to U.S. Magistrate Judge Jonathan W. Feldman (Docket No. 28) is hereby terminated. Signed by Hon. Charles J. Siragusa on 10/6/10. (KAP)**

**6:07-cv-06607-CJS-JWF Notice has been electronically mailed to:**

Carmen J. Gentile cgentile@ch.ci.buffalo.ny.us, cmiller@city-buffalo.com, dmalican@city-buffalo.com, drodriguez@city-buffalo.com, lawmaster@city-buffalo.com, rquinn@city-buffalo.com

**6:07-cv-06607-CJS-JWF Notice has been delivered by other means to:**

Keon A. Hart
08-B-1749
CENTRAL NEW YORK PSYCHIATRIC CENTER
P.O. Box 300
Marcy, NY 13404

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=10/7/2010] [FileNumber=1735824-0
] [a2abcabe5363d0b9bf919d1ffdf32b4fec7b3d6d28722a8cbe72d69fd9e4eecafe6
97448e9fa550b44d4899453843806e15ab0cea4c06926b7422b1c54cdcd88]]

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

KEON A. HART, 08 B 1749

                                        Plaintiff,

                                                        07-CV-6607-CJS-JWF

                        -vs-

                                                        DECISION & ORDER

MICHAEL MCCARTHY, *et ai.*,

                                        Defendants.

**Siragusa, J.** On March 17, 2010, U.S. Magistrate Judge Jonathan W. Feldman entered a decision and order (Docket No. 40) denying Defendants' motion (Docket No. 35) to transfer this case to the Buffalo division of the Western District of New York pursuant to 28 U.S.C. § 1404, writing that, "Defense counsel is advised to address his request for a change of trial location directly with Judge Siragusa...."

At the video conference with the undersigned, held on June 3, 2010, the Court addressed the motion with both parties. Plaintiff stated he opposed the motion because of a concern that he would not receive a fair trial in Buffalo. However, Plaintiff also conceded that he would be moving from his present location to Wende Correctional Facility within three weeks, and that Wende is located near Buffalo, and conceded that *all the witnesses to the case are in Buffalo*.

After considering the papers submitted in support of the motion, Plaintiff's papers in opposition and Plaintiff's concerns submitted orally at the video conference, it is hereby

ORDERED, that Defendants' motion (Docket No. 35) to transfer venue is granted; and it is further

ORDERED, that the Clerk transfer this case to the Buffalo division of the Western District of New York; and it is further

ORDERED, that the referral to U.S. Magistrate Judge Jonathan W. Feldman (Docket No. 28) is hereby terminated.

IT IS SO ORDERED.

Dated: October 6 , 2010
Rochester, New York

ENTER:

Charles J. Siragusa
United States District Judge

-2-



## Law Offices of
# Kenneth Hiller PLLC

Main Office: 6000 North Bailey Avenue, Suite 1A, Amherst, New York 14226
Telephone: (716) 564-3288  Facsimile: (716) 332-1884
Toll Free Number: (877) 236-7366
www.kennethhiller.com

**Via fax 315-768-8581 Ext. 2099**

February 24, 2012

Brandon Smith, Superintendent
Mid State Correctional Facility
P. O. Box 216
Marcy, New York 13403

        Re:     **Inmate – Keon A. Hart (08-B-1749)**

Dear Superintendent Smith:

        Please be advised that the undersigned represents Keon A. Hart. Enclosed please find Order from the Honorable Hugh B. Scott, U. S. District Court Judge, permitting a confidential telephone conference with Mr. Hart and his attorney, Kenneth R. Hiller, Esq.

        We would like to conduct this telephone conference on Monday, February 27, 2012, or in the morning of February 28, 2012, as there is a status conference with Judge Scott at 2:30 p.m. on February 28, 2012.

        Please confirm the date and time that this conference will take place so that I may block out the time in my calendar.

        Thank you for your cooperation in this matter.

                                Very truly yours,

                                Kenneth R. Hiller, Esq.

KRH/ld

*Social Security Disability, Consumer Litigation and Long Term Disability*

9:30AM  Mon4Ay  2/27/12
    Mr. Hiller called at 9:35AM - 10:10AM

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION **DIRECTIVE** | TITLE **Sexual Abuse Prevention & Intervention - Inmate-on-Inmate** | NO. 4027A |
|---|---|---|
| | | DATE 08/16/2011 |

| SUPERSEDES DIR# 4027A Dtd. 6/15/2005 | DISTRIBUTION A B | PAGES PAGE 1 OF 4 | DATE LAST REVISED |
|---|---|---|---|

| REFERENCES (Include but are not limited to) Penal Law § 130, "Standards of Inmate Behavior" Rule Series 101, Prison Rape Elimination Act of 2003 (PREA) 42, U.S.C. 15601 *et seq.* | APPROVING AUTHORITY |
|---|---|

**I.   DESCRIPTION**:  This Directive provides information concerning:

- The prevention of INMATE-ON-INMATE sexual abuse and sexual threats;

- The prevention of, detection of and response to allegations of INMATE-ON-INMATE sexual abuse and sexual threats, including prompt and effective intervention to address the safety and treatment needs of an inmate victim of sexual abuse;

- The duty of all staff to report any allegation of sexual abuse of an inmate and to report any actual knowledge or reasonable belief concerning any incident of sexual abuse;

- The duty of staff to report any allegation of retaliation for reporting an incident of sexual abuse or participating in an investigation of an incident of sexual abuse;

- The prevention of, detection of and response to allegations of retaliation for reporting an incident of sexual abuse or participating in an investigation of an incident of sexual abuse; and

- The discipline and/or prosecution of those who commit such acts of sexual abuse, sexual threats or retaliation.

**II.   POLICY**:  The New York State Department of Corrections and Community Supervision has zero tolerance for sexual abuse.  It is the policy of the Department that coercive inmate-on-inmate sexual conduct is sexual abuse and is not to be tolerated.  All allegations of sexual abuse, sexual threats and retaliation concerning an incident of sexual abuse will be thoroughly investigated.  Inmate Rule 101.10, "Standards of Inmate Behavior," prohibits inmates from engaging in, or soliciting others to engage in sexual acts.  No victim of inmate-on-inmate sexual abuse shall be subject to discipline for engaging in sexual acts as a result of threats, intimidation or other coercive actions.  Other sexual contact and conduct of a sexual nature are also prohibited by rules found in Rule Series 101.

**III.   DEFINITIONS**

A.   <u>Sexual Conduct</u> means sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact, and shall have the same meaning as set forth in Penal Law § 130.00.

B.   <u>Sexual Contact</u> means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party, and shall have the same meaning as set forth in Penal Law § 130.00.

C.   <u>Sexual Abuse</u> means Inmate-on-Inmate Sexual Abuse, as set forth herein, or Staff-on-Inmate Sexual Abuse, as covered in Directive #4028A "Sexual Abuse Prevention & Intervention – Staff-on-Inmate."

   1.   <u>Inmate-on-Inmate Sexual Abuse</u> is when one or more inmates engage in sexual conduct, including sexual contact, with another inmate against his or her will or by use of threats, intimidation or other coercive actions.  Inmate-on-Inmate Sexual Abuse is a form of "Prison Rape" under the Prison Rape Elimination Act of 2003, (PREA), 42 U.S.C. § 15609.

   2.   <u>Staff-on-Inmate Sexual Abuse</u> is when an employee, volunteer, intern or outside contractor engages in sexual conduct, including sexual contact, with an inmate.  Staff-on-Inmate Sexual Abuse is a form of "Prison Rape" under PREA.

D.    Attempt to Commit Sexual Abuse is when a person engages in conduct that tends to effect the commission of sexual conduct, including sexual contact.

E.    Sexual Threat means any spoken, written or other threat to engage in sexual conduct forcibly or against a person's will.

## IV. PROCEDURE

A.    Training

     1.    All employees shall receive, during initial training and as in-service training at least every three years, instruction that relates to the prevention, detection, response and investigation of inmate-on-inmate sexual abuse in a correctional environment.

     2.    All contractors and contract employees, volunteers and interns shall receive orientation and periodic in-service training consistent with their level of inmate contact relating to the prevention, detection and response to inmate-on-inmate sexual abuse.

     3.    All inmates shall receive during orientation at reception and at facility orientation after transfer, information which addresses sexual abuse. The information shall be communicated orally and in writing (in English and Spanish), in a language clearly understood by the inmates. This information will address prevention, self protection (situation avoidance), reporting sexual abuse and the availability of treatment and counseling.

B.    Assessment and Classification

     1.    An initial assessment will be conducted of all inmates arriving at a Reception Center. This assessment is intended to identify a number of classification concerns including a determination of an inmate's vulnerability or tendencies of acting out with sexually aggressive behavior. Inmates identified as high risk with a history of sexually assaultive behavior or vulnerability will be identified, such concerns shall be noted upon the inmate's security classification in accordance with the "Manual for Security Classification Guidelines," and appropriate measures will be taken to ensure that they are monitored. Counseling services will be available to address concerns associated with a history of sexual victimization and/or a history of violent behavior, as appropriate. This assessment will also be considered in assigning an inmate's location. The initial assessment must include a preliminary review by Security, Health Services and Classification staff within 24 hours of an inmate's arrival at the reception facility.

     2.    An inmate's vulnerability or tendency of acting out with sexually aggressive behavior shall be monitored and any specific occurrence or information shall be noted and considered in connection with any transfer. The sending facility correction counselor shall screen the inmate's record prior to transfer for any history of sexual vulnerability or sexually aggressive behavior. The sending facility senior correction counselor shall advise the receiving facility, and each in-transit facility, via electronic mail to the watch commander, of any such history. Upon each transfer, any inmate so identified will be screened by a security supervisor within 24 hours of arrival at the facility for any indication of current sexual vulnerability or sexually aggressive behavior. Information from the screening process, the initial assessment, quarterly reviews, and inmate disciplinary history, will be reviewed and considered for purposes of classification, housing assignments and programming, etc.

C.    Reporting and Investigation of Inmate-on-Inmate Sexual Abuse or Sexual Threats: An inmate may report an incident of inmate-on-inmate sexual abuse, sexual threats or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse to any employee. The initial inmate report may be verbal or in writing. For reporting purposes under this Directive, "employee" includes any employee, contractor or contract employee, volunteer or intern of the Department, or any employee, contractor or contract employee assigned to work in a Department correctional facility by any other State agency.

1.  An employee who receives a report that an inmate is the victim of an incident of sexual abuse or sexual threats must be aware of the sensitive nature of the situation. The inmate must be treated with due consideration for the effects of sexual abuse.

2.  Any employee who receives a report of sexual abuse, sexual threats, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse shall immediately notify his or her immediate supervisor who shall immediately notify the Watch Commander. In the event the immediate supervisor is not available, the employee shall immediately notify the Watch Commander directly. The employee shall report the specific details, in writing, to the Watch Commander before the end of the shift. A medical practitioner who receives such information in the course of providing medical treatment to an inmate is required to report the minimum information necessary as set forth in 1.60 of the Department of Corrections and Community Supervision' Health Services Policy Manual.

3.  The Watch Commander shall initiate the sexual abuse protocols, including securing the crime scene, where appropriate.

4.  Reports of sexual abuse are confidential and information, including but not limited to the identity of the victim, the identity of the person reporting the sexual abuse, the identity of witnesses and the identity of the alleged perpetrator, is only to be shared with essential employees involved in the reporting, investigation, discipline and treatment process, or as otherwise required by law.

5.  No reprisals of any kind shall be taken against an inmate or employee for good faith reporting of sexual abuse or sexual threats.

Note: Allegations of inmate-on-inmate sexual abuse may be reported to appropriate law enforcement officials in accordance with Department policy. A person is guilty of falsely reporting an incident if it is proven beyond a reasonable doubt that, knowing the information reported, conveyed or circulated to be false or baseless, he or she reports to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not in fact occur (Penal Law § 240.50). A report made in good faith based upon a reasonable belief that the alleged conduct did occur does not constitute falsely reporting an incident or lying for the purpose of disciplinary action even if investigation does not establish evidence sufficient to substantiate the allegation.

D.  Discipline and Prosecution

1.  Whenever an employee ascertains facts that an inmate perpetrated an act of inmate-on-inmate sexual abuse, it is the Department's policy to report such incidents on an Inmate Misbehavior Report and to seek discipline of the aggressor in accordance with the standards of behavior. Furthermore, whenever investigation substantiates an allegation of inmate-on-inmate sexual abuse, the matter shall be referred to the appropriate law enforcement agency and/or District Attorney, through the Department's Office of the Inspector General, for consideration of criminal charges against the aggressor.

2.  Whenever an employee ascertains facts that an inmate made a sexual threat, it is the Department's policy to report such incidents on an Inmate Misbehavior Report and to seek discipline of the aggressor in accordance with the standards of behavior.

3.  A victim of inmate-on-inmate sexual abuse, including an inmate who engages in a sexual act as a result of threats, intimidation or other coercive actions, is not subject to discipline absent proof of false reporting following a full investigation of the incident and after consultation with the Department's Office of the Inspector General.

## V.   STAFF DUTY TO REPORT

A.   An inmate may report an incident of inmate-on-inmate sexual abuse or an allegation of retaliation concerning an incident of sexual abuse to any employee. The employee shall immediately notify his or her supervisor or the Watch Commander pursuant to section IV, above.   The initial inmate report may be verbal or in writing.

B.   All employees, regardless of title, are under a duty to report any inmate-on-inmate sexual abuse or threat (see Section III, DEFINITIONS), or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse. Such duty to report shall include any knowledge or a reasonable belief that the employee has of any sexual conduct taking place or that has taken place between any inmates in the custody of the Department. Any employee having either knowledge or a reasonable belief of any inmate-on-inmate sexual abuse or threat has a duty to report such information to their immediate supervisor, who shall immediately notify the Watch Commander of the correctional facility where such sexual conduct is taking place or has taken place. In the event the immediate supervisor is not available, the employee shall immediately notify the Watch Commander directly.

C.   Any employee who receives a report of any inmate-on-inmate sexual abuse or threat (see Section III, DEFINITIONS), or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse, involving an offender who is being supervised in the community has a duty to report such information to their immediate supervisor, who shall immediately notify the Office of the Inspector General.  In the event the immediate supervisor is not available, the employee shall immediately notify the Office of the Inspector General directly.

D.   Any employee who receives a report of sexual abuse or has either knowledge or a reasonable belief that an incident or threat of inmate-on-inmate sexual abuse, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse has occurred and who fails to report such information is subject to disciplinary action.

| STATE OF NEW YORK<br>DEPARTMENT OF CORRECTIONS<br>AND COMMUNITY SUPERVISION<br><br>**DIRECTIVE** | TITLE<br><br>**Sexual Abuse Prevention &<br>Intervention - Staff-on-<br>Inmate** | | NO.<br>4028A |
|---|---|---|---|
| | | | DATE<br>08/17/2011 |
| SUPERSEDES<br>DIR# 4028A Dtd. 06/15/2005 | DISTRIBUTION<br>A  B | PAGES<br>PAGE 1 OF 4 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to)<br>Penal Law §130, "Standards of Inmate Behavior" Rule Series 101,<br>Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. 15601 *et seq.* | APPROVING AUTHORITY | | |

I. **DESCRIPTION**: This Directive provides information concerning:

- The prevention of STAFF-ON-INMATE sexual abuse, sexual threats and staff voyeurism;
- The prevention of, detection of and response to allegations of STAFF-ON-INMATE sexual abuse, sexual threats and staff voyeurism, including prompt and effective intervention to address the safety and treatment needs of an inmate victim of sexual abuse;
- The duty of all staff to report any allegation of sexual abuse of an inmate and to report any actual knowledge or reasonable belief concerning any incident of sexual abuse or the existence of an inappropriate relationship between a staff member and an inmate;
- The duty of staff to report any allegation of retaliation for reporting an incident of sexual abuse or participating in an investigation of an incident of sexual abuse;
- The prevention of, detection of and response to allegations of retaliation for reporting an incident of sexual abuse or participating in an investigation of an incident of sexual abuse; and
- The discipline and/or prosecution of those who commit such acts of sexual abuse, sexual threats, staff voyeurism or retaliation.

II. **POLICY**: The New York State Department of Corrections and Community Supervision has zero tolerance for sexual abuse. It is the policy of the Department that staff-on-inmate sexual conduct is sexual abuse and is not to be tolerated. Every incident of staff sexual conduct with an inmate presents a threat to the security of the facility and the Department. All allegations of sexual abuse, sexual threats, staff voyeurism or retaliation concerning an incident of sexual abuse will be thoroughly investigated.

Section 130.05 of the Penal Law removes any legal ability on the part of the inmate to consent to sexual conduct, including sexual contact, with an employee, unless they are married. Sexual conduct with an inmate, including sexual contact, by any person providing direct services to inmates in a state correctional facility pursuant to a contractual arrangement or, in the case of a volunteer, a written agreement with the Department, is also prohibited under Penal Law § 130.05. An employee, contractor, contract employee or volunteer who engages in sexual conduct, including sexual contact, with an inmate is guilty of a sex offense even if the inmate "willingly" participates in the act. Sexual conduct with a person committed to the custody of the Department is a crime whether it occurs inside a correctional facility, during transportation outside a correctional facility, or while the inmate is a participant in a temporary release program. Any sexual abuse of an inmate by a staff member will be prosecuted to the fullest extent of the law.

Note: Any incident of sexual assault on staff by an inmate will be immediately reported to the Office of the Inspector General and handled in accordance with established Department policy for investigation and criminal prosecution of inmates (see Directive #6910 "Criminal Prosecution of Inmates").

III. **DEFINITIONS**

A. <u>Sexual Conduct</u> means sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact or sexual contact and shall have the same meaning as set forth in Penal Law § 130.00.

Case 2:13-cv-05654-JFB-ARL   Document 1   Filed 10/07/13   Page 25 of 59 PageID #: 25

B.   Sexual Contact means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party and shall have the same meaning as set forth in Penal Law § 130.00.

NOTE: "Sexual Contact" does not include touching of the intimate parts of another person during the performance of a personal search in accordance with Department procedures as outlined in Directive #4910, "Control of and Search for Contraband," or during a medical examination by health care staff for a proper medical purpose.

C.   Sexual Abuse means Inmate-on-Inmate Sexual Abuse as covered in Directive #4027A "Sexual Abuse Prevention & Intervention – Inmate-on-Inmate" or Staff-on-Inmate Sexual Abuse, as set forth herein.

1.   Inmate-on-Inmate Sexual Abuse is when one or more inmates engage in sexual conduct, including sexual contact, with another inmate against his or her will or by use of threats, intimidation or other coercive actions. Inmate-on-Inmate Sexual Abuse is a form of "Prison Rape" under the Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. § 15609.

2.   Staff-on-Inmate Sexual Abuse is when an employee, volunteer, intern or outside contractor engages in sexual conduct, including sexual contact, with an inmate. Staff-on-Inmate Sexual Abuse is a form of "Prison Rape" under PREA.

D.   Attempt to Commit Sexual Abuse is when a person engages in conduct that tends to effect the commission of sexual conduct, including sexual contact.

E.   Sexual Threat means any spoken, written or other threat to engage in sexual conduct forcibly or against a person's will.

F.   Staff Voyeurism means the intentional or surreptitious viewing, broadcast or recording of an inmate dressing or undressing or of the sexual or other intimate parts of such inmate for the purpose of sexual arousal or sexual gratification, amusement, entertainment, or profit, or for the purpose of degrading or abusing a person.

NOTE: "Staff Voyeurism" does not include the viewing of the sexual or other intimate parts of another person during a personal search in accordance with Department procedures as outlined in Directive #4910; or inadvertently or accidentally during rounds, while assigned to monitor Department security camera systems, during the performance of other official duties; or during a medical examination by health care staff for a proper medical purpose.

G.   Inappropriate relationship means any association with criminals or persons engaged in unlawful activities or any conversation, communication, dealing, transaction, association, or relationship with any inmate, former inmate, parolee or former parolee, or any visitor, friend, or relative of same in any manner or form which is not necessary or proper for the discharge of the employee's duties and that has not been authorized in accordance with applicable policy.

IV.   **PURPOSE**: The purpose of this Directive is to provide guidelines for the prevention, detection, response and investigation of sexual abuse or sexual threats, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse, including prompt and effective intervention to address the safety and treatment needs of an inmate victim of sexual abuse, and the investigation, discipline and prosecution of the aggressor(s).

V.   **PROCEDURE**

A.   Training

1.   All employees shall receive, during initial training and as in-service training at least every three years, instruction that relates to the prevention, detection, response and investigation of staff-on-inmate sexual abuse in a correctional environment.

2.  All contractors and contract employees, volunteers and interns shall receive orientation and periodic in-service training consistent with their level of inmate contact relating to the prevention, detection and response to staff-on-inmate sexual abuse.

3.  All inmates shall receive during orientation at reception and at facility orientation after transfer, information which addresses sexual abuse. The information shall be communicated orally and in writing (in English and Spanish), in a language clearly understood by the inmates. This information will address prevention, self protection (situation avoidance), reporting sexual abuse and the availability of treatment and counseling.

B.  Reporting and Investigation of Staff-on-Inmate Sexual Abuse or Sexual Threats: An inmate may report an incident of staff-on-inmate sexual abuse, sexual threats, staff voyeurism or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse to any employee. The initial inmate report may be verbal or in writing. For reporting purposes under this Directive, "employee" includes any employee, contractor or contract employee, volunteer or intern of the Department, or any employee, contractor or contract employee assigned to work in a Department correctional facility by any other State agency.

1.  An employee who receives a report that an inmate is the victim of an incident of sexual abuse, sexual threats or staff voyeurism must be aware of the sensitive nature of the situation. The inmate must be treated with due consideration for the effects of sexual abuse.

2.  Any employee who receives a report of sexual abuse, sexual threats, staff voyeurism, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse shall immediately notify his or her immediate supervisor who shall immediately notify the Watch Commander. In the event the immediate supervisor is not available, the employee shall immediately notify the Watch Commander directly. The employee shall report the specific details, in writing, to the Watch Commander before the end of the shift. A medical practitioner who receives such information in the course of providing medical treatment to an inmate is required to report the minimum information necessary as set forth in 1.60 of the Department of Corrections and Community Supervision Health Services Policy Manual.

3.  The Watch Commander shall initiate the sexual abuse protocols, including securing the crime scene, where appropriate.

4.  Reports of sexual abuse are confidential and information, including but not limited to the identity of the victim, the identity of the person reporting the sexual abuse, the identity of witnesses and the identity of the alleged perpetrator, is only to be shared with essential employees involved in the reporting, investigation, discipline and treatment process, or as otherwise required by law.

5.  No reprisals of any kind shall be taken against an inmate or employee for good faith reporting of sexual abuse or sexual threats.

Note: All allegations of staff-on-inmate sexual abuse are reported to appropriate law enforcement officials by the Department's Office of the Inspector General. A person is guilty of falsely reporting an incident if it is proven beyond a reasonable doubt that, knowing the information reported, conveyed or circulated to be false or baseless, he or she reports to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not in fact occur (Penal Law § 240.50). A report made in good faith based upon a reasonable belief that the alleged conduct did occur does not constitute falsely reporting an incident or lying for the purpose of disciplinary action, even if investigation does not establish evidence sufficient to substantiate the allegation.

C.  Discipline and Prosecution: When investigation substantiates an allegation of staff-on-inmate sexual abuse, it is the Department's policy to refer such incident to the appropriate law enforcement agency or District Attorney, through the Department's Office of the Inspector General, for consideration of criminal charges. Any conduct constituting staff-on-inmate sexual abuse, staff voyeurism, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse may be the basis for disciplinary action whether or not prosecution or a conviction results.

## VI.  STAFF DUTY TO REPORT

A. An inmate may report an incident of staff-on-inmate sexual abuse or an allegation of retaliation concerning an incident of sexual abuse to any employee. The employee shall immediately notify his or her supervisor or the Watch Commander pursuant to Section V, above.   The initial inmate report may be verbal or in writing.

B. All employees, regardless of title, are under a duty to report:

1. Any sexual conduct (sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact) between another employee and an inmate;

2. Any inappropriate relationship between another employee and an inmate;

3. Any act of staff voyeurism; or

4. Any allegation of retaliation for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse.

C. Such duty to report shall include any knowledge or a reasonable belief that the employee has of any sexual conduct taking place or that has taken place between any employee and any inmate. Any employee having either knowledge or a reasonable belief of any sexual conduct, including sexual contact, taking place or having taken place between any employee and an inmate, any inappropriate relationship between any employee and an inmate, or any act of staff voyeurism has a duty to report such information to their immediate supervisor, who shall immediately notify the Watch Commander of the correctional facility where such sexual conduct is taking place or has taken place. In the event the immediate supervisor is not available, the employee shall immediately notify the Watch Commander directly.

D. Any employee who receives a report of a sexual abuse incident as outlined in IV-B, above, involving an offender who is being supervised in the community has a duty to report such information to their immediate supervisor, who shall immediately notify the Office of the Inspector General. In the event the immediate supervisor is not available, the employee shall immediately notify the Office of the Inspector General directly.

E. Any employee who receives a report of sexual abuse or has either knowledge or a reasonable belief of any sexual conduct, sexual contact, inappropriate relationship or staff voyeurism between an employee and an inmate, or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse, and who fails to report such information is subject to disciplinary action.

# ADR PLAN
# WESTERN DISTRICT OF NEW YORK

## Revised: June 24, 2011

### SECTION 1 - INTRODUCTION AND AUTHORITY

**1.1**   **TITLE**

This is the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York (the "ADR Plan").

**1.2**   **PURPOSE AND SCOPE**

**A.**   **Purpose.**  The United States District Court for the Western District of New York (the "Court") adopted the ADR Plan on January 1, 2006 (the "Effective Date"), to make available to civil litigants court-administered ADR interventions and processes designed to provide quicker, less expensive and potentially more satisfying alternatives to continuing litigation, without impairing the quality of justice or the right to trial.

**B.**   **Scope.**  This ADR Plan applies to civil actions pending or commenced on and after the Effective Date, except as otherwise indicated herein. The ADR Plan supplements this Court's Local Rules of Civil Procedure, which shall remain in full effect for all cases.

**C.**   **Magistrate Judge Consent Cases.**  Consistent with Local Rule of Civil Procedure 72.1, in cases where the parties have consented to jurisdiction by a Magistrate Judge under 28 U.S.C. § 636, the Magistrate Judge shall have the same powers as the District Court Judge originally assigned to the case.

**D.**   **Plan Administration.**

    1.   **Staffing.** The Court will seek funding for staff to coordinate and implement the ADR Plan. In the interim, the Court will utilize current staff and seek volunteers to assist in implementation.

    2.   **ADR Information and Guidelines.**  Information about the ADR Plan, the Court's proposed Local Rule for mediation and guidelines for the conduct of ADR are available at *http://www.nywd.uscourts.gov/adr/* and also at the Court Clerk's office.

1

3.    All inquiries about the ADR Plan should be directed to:

Barry L. Radlin, Esq., ADR Program Administrator
U.S. District Court
2 Niagara Square
Buffalo, New York 14202-3350

Telephone:    (716) 551-1511
e-mail:        Barry_Radlin@nywd.uscourts.gov

2

## SECTION 2 - OVERVIEW

### 2.1 REFERRAL TO ADR

**A.** **New Cases**. All civil cases filed on and after the Effective Date of the ADR Plan shall be referred automatically for ADR. Notice of the ADR requirements will be provided to all parties immediately upon the filing of a complaint and answer or a notice of removal. ADR intervention will be scheduled at the conference held pursuant to Local Rule of Civil Procedure 16.1. The following categories of actions are exempted from automatic referral:

1. *Habeas Corpus* and extraordinary writs;

2. Applications to vacate a sentence;

3. Social Security appeals;

4. Bankruptcy appeals;

5. Cases implicating issues of public policy, exclusively or predominantly;

6. IRS summons enforcement actions;

7. Government foreclosure actions;

8. Civil asset forfeiture actions; and

9. Prisoner civil rights actions.

**B.** **Pending Cases**. The assigned Judge on any pending civil case may, *sua sponte* or with status conference, issue an order referring the case for ADR. The order shall specify a date on which the ADR intervention is to be completed.

**C.** **Stipulation**. A case may be referred for ADR by stipulation of all parties. Stipulations shall be filed and shall designate the specific ADR intervention the parties have selected, the time frame within which the ADR process will be completed and the selected Neutral. Stipulations are presumed acceptable unless the assigned Judge determines that the interests of justice are not served.

### 2.2 RELIEF FROM ADR REFERRAL

**A.** **Opting Out Motions**. Any party may file, with the assigned Judge for that case, a motion to opt out of, or for relief from, ADR.

**B.** **Motion**. Opting Out Motions must be made within fourteen (14) days from (i) the date of the first discovery conference under Local Rule 16.1 in new cases, or (ii) the date of a *sua sponte* ADR Referral Order in pending cases.

3

C.   **Criteria**.   Opting Out Motions shall be granted only for "good cause" shown. Inconvenience, travel costs, attorney fees or other costs shall not constitute "good cause." A party seeking relief from ADR must set forth the reasons why ADR has no reasonable chance of being productive.

D.   **Judicial Initiative**.  The assigned Judge may, *sua sponte,* exempt any case from the Court's ADR Plan.

## 2.3   VIOLATIONS OF THE ADR PLAN

A.   **Report of Violation**.  A Neutral or party may report to the assigned Judge any failure to attend an ADR conference, to substantially comply with the ADR Referral Order, or to otherwise participate in the ADR process in good faith.

B.   **Proceedings and Sanctions in Response to Report of Violation**.  Upon *receipt of* such a report, the Court may take whatever actions it deems appropriate, including issuing an order to show cause why sanctions should not be imposed.  Show cause hearings shall be conducted on the record, but under seal.  If sanctions are imposed, objections thereto and any other comment thereon shall be filed with the Court within fourteen (14) days from the date of the notice of sanctions and contemporaneously served on all other counsel, unrepresented parties and the Neutral.

## 2.4   EVALUATION OF THE ADR PLAN

Congress has mandated that the Courts' ADR programs be evaluated.  Neutrals, counsel and parties shall promptly respond to any request from the Court for an evaluation of the ADR Plan.  Responses will be used for research and monitoring purposes only.  The sources of specific information will not be disclosed to the assigned Judge or in any report.

## SECTION 3 - NEUTRALS

### 3.1   NEUTRALS

**A.     Neutral Panels**.  The Court shall maintain panels of Neutrals to serve the various interventions and processes under the ADR Plan.  Membership on any panel is a privilege, not a right.  The Court shall have the authority to establish qualifications for Neutrals, monitor their performance and withdraw any Neutral from a panel. Applications are available at the Court's website and from the Clerk's offices in Buffalo and Rochester.

**B.     Private Neutrals**.  The parties may select a Neutral who is not a member of the Court's panel.  Such selections are presumed acceptable unless the assigned Judge determines that the interests of justice are not served.

**C.     Qualifications and Training**.  The requirements for panel membership are specific to each intervention and process under the ADR Plan and are set forth in the corresponding sections below.

**D.     Oath**.  All persons serving as Neutrals shall take the oath or affirmation prescribed in 28 U.S.C. § 453.

**E.     Disqualification and Unavailability of Neutrals**.

   1.    **Disqualification**.  A Neutral may be disqualified for bias or prejudice, pursuant to 28 U.S.C. § 144.  A Neutral shall disqualify himself or herself in any case in which a justice, judge or magistrate judge would be disqualified pursuant to 28 U.S.C. § 455, subject to the waiver provision of 42 U.S.C. § 455(e).

   2.    **Notice of Recusal**.  A Neutral who discovers a circumstance requiring disqualification shall immediately notify all counsel, unrepresented parties and the Court.  A new Neutral shall be selected by agreement of the parties or, in the event the parties are unable to agree, by the Court.

   3.    **Objections to Selected Neutral**.  Prior to the issuance of an Order designating a Neutral, the Court will contact the selected Neutral who will review the case for possible conflicts.  Following issuance of the Court's Order, a party who believes a disqualifying conflict exists should first confer with the Neutral.  If the matter is not resolved by, for example, waiver or recusal, a motion and supporting affidavit shall be filed with the Court, within fourteen (14) days from the Court's Order, stating the facts and the reasons for the belief that a disqualifying conflict, bias or prejudice exists.  In the event a conflict or other objection does not become apparent until after the ADR process has

commenced, a motion for disqualification must be made at the earliest opportunity or the objection is waived.

4. **Unavailability.** A selected Neutral who later becomes unable to serve within the time period set forth in the Court's Scheduling or Referral Order shall notify all counsel, unrepresented parties and the Court. A new Neutral shall be selected by agreement of the parties or, in the event the parties are unable to agree, by the Court.

## 3.2   IMMUNITIES

All persons serving as Neutrals in the Court's ADR Plan are performing quasi-judicial functions and are entitled to all the immunities and protections that the law accords to the performance of tasks integrally related to the judicial process, including settlement and alternative dispute resolution. *See, e.g., **Wagshal v. Foster**, 28 F.3d 1249 (D.C. Cir. 1994).*

## 3.3   COMPENSATION OF NEUTRALS

A Neutral's fees shall be shared equally by all separately represented parties, unless otherwise agreed by the parties or ordered by the Court.

6

## SECTION 4 - APPROVED ADR PLAN INTERVENTIONS

### 4.1    ADR INTERVENTIONS

A.    **Options**.  It is expected that cases referred for ADR will proceed to Mediation. However, the following options are also available upon the stipulation of all parties:

1.    Neutral Evaluation;

2.    Mini Summary Trial;

3.    Arbitration (Binding and Non-Binding);

4.    Case Valuation; and

5.    Settlement Week, when scheduled by the Court.

B.    **Timing**.  Timing is specific to the intervention and process chosen, as set forth in the corresponding sections below.

C.    **Scheduling.**  The referral of a case to ADR does not delay or defer other dates established in the Scheduling Order and has no effect on the scheduled progress of the case toward trial.

### 4.2    SELECTING AN ADR INTERVENTION

A.    **New Cases.**  Prior to the Local Rule 16.1 scheduling conference, counsel and any unrepresented parties shall confer about ADR as part of their discussion of "the possibilities for a prompt settlement or resolution of the case" pursuant to Fed. R. Civ. P. 26(f).  Unless the parties agree to a different intervention, it is presumed that they will participate in mediation.  The parties shall attempt to agree upon a Neutral and, at the scheduling conference, shall be prepared to report on the outcome of their ADR discussion pursuant to Local Rule 16.1(a)(3)(F).  The initial Scheduling Order shall include a deadline for the completion of ADR.

B.    **Pending Cases.**  In pending cases, all *sua sponte* referrals will be to mediation. Should the parties agree that a different ADR intervention is more appropriate to their case, they may submit a stipulation designating  the specific ADR intervention selected, the time frame within which the ADR process will be completed and the identity of the Neutral.  Stipulations must be filed within fourteen (14) days from the date of the ADR Referral Order and are presumed acceptable unless the assigned Judge determines that the interests of justice are not served.

**4.3**     **MULTIPLE ADR INTERVENTIONS**

**A.**     **Initial Intervention.**   Generally, a first mediation session will be scheduled within twelve (12) weeks after the Local Rule 16.1 conference. The minimum duration for the first session is two (2) hours, but the parties are encouraged to spend additional time unless the Mediator agrees that additional time would not be productive.

**B.**     **Additional Interventions.**  If the initial mediation session is not successful in resolving the case, additional sessions or process will be scheduled as set forth below:

1.     **By the Mediator.**  The Mediator will, in consultation with the parties, schedule subsequent sessions as needed to explore and evaluate the possibility of reaching a mutually acceptable resolution.  It is anticipated that the parties will engage in at least two mediation sessions.   Additional sessions must be conducted within the date for completion of ADR set forth in the Court's Scheduling or Referral Order.

2.     **By Stipulation.**  If, after the initial mediation session, the parties agree that an intervention other than mediation may be of benefit in resolving the case, they must submit a stipulation consistent with 4.2(B) and the stipulation will be presumed acceptable unless the assigned Judge determines that the interests of justice are not served.

**4.4**     **CONFIDENTIALITY**

Each of the interventions and processes under this ADR Plan shall be confidential as set forth in the corresponding sections below.

## SECTION 5 - MEDIATION

### 5.1 DESCRIPTION OF MEDIATION AND ITS PROCESS

Mediation, as defined in proposed Local Rule 16.2-1 and as further detailed herein, is a flexible, non-binding, confidential process in which a qualified Neutral, the Mediator, facilitates resolution of the issues between the parties and assists with settlement discussions. Through various methods and techniques, the Mediator seeks to improve communication between the participants (parties, counsel, experts or whoever is included in the mediation); helps participants articulate their interests; helps participants understand the interests of the other participants, including their "opponent;" probes the strengths and weaknesses of each party's legal positions; and helps generate and define options for a mutually agreeable resolution. The Mediator may engage in "reality checking," but will not give an overall evaluation of the case unless requested by all the parties. The Mediator has no fact-finding or decision-making authority. The central tenet of mediation is that the parties find their own solutions, with the assistance of the Mediator. A hallmark of mediation is its capacity to go beyond traditional settlement discussions and explore creative outcomes responsive to the participants' needs and interests.

### 5.2 QUALIFICATIONS OF MEDIATORS

### A. Who May Qualify

Mediators may be attorneys or non-attorneys, with relevant experience. All Mediators must successfully complete initial and periodic training as required by the Court. All Mediators must have a minimum of twenty (20) certified hours of training in the discipline of ADR. Non-attorneys must also complete a minimum of four (4) hours of training in federal court civil practice and procedure.

To effectively assist ADR participants and the Court, Mediators must:

- Be knowledgeable about civil litigation in federal court
- Have strong mediation process skills and the temperament to listen effectively and facilitate communication between all participants and across "party" lines
- Exhibit strong problem-solving skills and the ability to generate meaningful options to assist parties and other participants with settlement negotiations

9

**5.3**   **COMPENSATION OF MEDIATORS**

**A.**   Mediators shall receive $150/hour for the first two hours of the initial mediation session. Thereafter, Mediators shall receive no more than their Court-approved hourly rates for time spent in mediation and preparation.

**B.**   Mediators may require that counsel and/or parties sign an agreement confirming the terms of retention and compensation.

**C.**   Mediator fees shall be divided equally among all separately represented parties, unless otherwise agreed or ordered by the Court.

**D.**   A party who has been granted *in forma pauperis* status is automatically relieved of his or her *pro rata* share of the Mediator's fee. All other parties shall continue to bear their *pro rata* portions of the fee.

**E.**   A party who has not sought *in forma pauperis* status, but is financially unable to pay all or part of the *pro rata* share of the Mediator's fee, may move for a waiver of the fee requirement on a form provided by the Court.

**F.**   All Mediation Panel members must provide *pro bono* services. The minimum service requirement is one *pro bono* case or two reduced compensation cases for every four (4) fully-compensated cases for which the Mediator is selected. Additional *pro bono* service is encouraged.

**5.4**   **SELECTION OF MEDIATOR**

**A.**   **Mediator Panel List**. The Court shall maintain a list of trained Mediators. Each Mediator shall provide to the Court information on his or her area(s) of expertise and compensation rates.

**B.**   **Private Mediators**. The parties may select a Mediator other than from the Court's Mediator list. Such selections are presumed acceptable unless the assigned Judge determines that the interests of justice are not served.

**C.**   **Selection**.

1.   Once the parties have stipulated or been referred to mediation, they shall have twenty-eight (28) days from the date of the Local Rule 16.1 conference or ADR Referral Order in which to select a Mediator, confirm the Mediator's availability and file a stipulation regarding their selection. The Clerk shall send a copy of the ADR Scheduling and/or Referral Order to the Mediator.

2.   If the parties fail to agree upon a Mediator within the twenty-eight (28) day period, the Court shall select a Mediator for the case from the Court's Mediator list and shall issue an Order notifying the parties of the Mediator's identity.

## 5.5   SCHEDULING AND LOCATION OF MEDIATION

A.   **Scheduling**. Promptly upon being selected, the Mediator shall conduct a telephone conference, jointly or separately, with counsel and any unrepresented parties, to fix the date and place of the mediation.

B.   **Timing**. Unless otherwise ordered, a first mediation session shall be conducted within twelve (12) weeks after the Local Rule 16.1 conference. In pending cases, mediation shall be conducted in accordance with the ADR Referral Order.

C.   **Location**. The mediation session shall be held in the U.S. Courthouse or the Mediator's office, unless otherwise agreed.

## 5.6   MEDIATION MEMORANDUM

A.   **Time for Submission**. No later than seven (7) days before the scheduled mediation session, each party shall submit to the Mediator a written "Mediation Memorandum."

B.   **Prohibition Against Filing**. Mediation Memoranda shall not be filed and the assigned Judge shall not have access to them. They shall be subject to the confidentiality of the mediation process and treated as a document prepared "for settlement purposes only."

C.   **Content of Mediation Memoranda**. Mediation Memoranda must not exceed ten (10) double-spaced pages and shall:

1.   Identify by name and title or status:

a.   All person(s) with factual knowledge and/or settlement authority, who, in addition to counsel, will attend the mediation as a representative(s) of the party; and

b.   Any other person(s) (including an insurer representative) whose presence might substantially improve the effectiveness of the mediation or the prospects of settlement;

2.   Concisely describe the parties' claims and defenses, addressing the parties' views of the key liability issues and damages, and discussing the key evidence;

3.   State the relief sought in the case and the basis for monetary calculations;

11

4.     Describe the current status of the case, including the status of any motions made;

5.     Describe the history and current status of settlement negotiations, including offers and counteroffers; and

6.     Provide any other information that might be pertinent to resolution of the case, including possible settlement options and alternatives.

Parties should include, along with the Mediation Memorandum, copies of documents that are likely to make the mediation more productive or materially advance settlement prospects.

## 5.7    COMMUNICATIONS WITH THE MEDIATOR

After receiving Mediation Memoranda and submissions pursuant to Section 5.6, the Mediator may request additional information from any party or participant. The Mediator, at his or her discretion, may also discuss the case in confidence and *ex parte* with counsel, parties and/or representatives. The Mediator shall not disclose any confidential communication, including the Mediation Memoranda and submissions, without permission.

## 5.8    ATTENDANCE AND PARTICIPATION

A.    **Parties**. All named parties and their counsel are required to attend the mediation session(s) in person unless excused under 5.8(E) below.

1.     **Corporation or other entity**. A party other than a natural person (*e.g.* a corporation or some other entity or association) satisfies this attendance requirement if represented by one or more persons, other than outside counsel, who have authority to settle and who are knowledgeable about the facts and circumstances of the case and the claims being made.

2.     **Government entity**. A unit or agency of government satisfies this attendance requirement if represented by one or more persons who have, to the greatest extent feasible, authority to settle, and who are knowledgeable about the facts of the case, the agency's or unit's position, and the procedures and policies under which the agency or unit decides whether to enter into proposed settlements. If the action is brought by the government on behalf of one or more individuals, at least one such individual shall also attend.

**B.**   **Counsel**.  Each party shall be accompanied at the mediation session by the attorney who will be primarily responsible for handling the trial of the matter and/or is most familiar with the matter at that stage of the proceeding.  A party who is proceeding *pro se* may be accompanied by one non-attorney whom the party relies on for support and/or assistance.

**C.**   **Insurers**.  Insurer representatives are required to attend in person if their agreement is necessary to achieve a settlement, unless excused under 5.8(E) below.

**D.**   **Other Attendees**.  The Mediator may require the attendance of any other individual who appears reasonably necessary for the advancement of communication and resolution between the parties.

**E.**   **Request to be Excused**.  Any person who is required to attend a mediation session may be excused from attending in person only after showing that personal attendance would impose an extraordinary or otherwise unjustifiable hardship.  Not less than fourteen (14) days before the date set for the mediation, a person seeking to be excused must submit a letter to the Mediator with copies sent to all other counsel and unrepresented parties, which states:

1.   All considerations that support the request; and

2.   Whether the other party or parties join in or object to the request.

Any party opposing the request shall submit a written statement of opposition no less than seven (7) days prior to the mediation.

The Mediator shall promptly make a determination as to the necessity of the person's attendance and may require personal participation, permit participation by telephone, or excuse the person's presence altogether.  The Mediator's decision shall be final.

**F.**   **Participation by Telephone**.  A person excused from appearing in person at a mediation session shall be available by telephone or otherwise be available as the Mediator may direct.

**G.**   **Good Faith Participation in the Process**.  All parties and counsel shall participate in mediation in good faith.  Failure to do so shall be sanctionable by the Court.

13

## 5.9 THE MEDIATION SESSION

**A.** The first mediation session shall be a minimum of two (2) hours. The parties may, and are encouraged to, extend the length of the session.

**B.** The mediation session shall be conducted in accordance with the process described in detail by the Mediator during the opening of the mediation. The process may include, as appropriate and necessary, the following:

- Mediator "opening statement" and introduction to the process and session
- An opportunity to present each party's positions, claims and concerns
- Joint sessions with all parties participating
- Various "caucus" sessions in which the Mediator meets with one or more parties and/or their counsel, as the Mediator deems appropriate

**C.** The Mediator shall have discretion to structure the mediation so as to maximize the benefits of the process.

**D.** Any communications to the Mediator during a "caucus" shall not be disclosed by the Mediator to any other party without permission.

**E.** The mediation session shall be informal, and conducted with civility.

## 5.10 CONFIDENTIALITY IN MEDIATION

**A.** **Confidential Treatment**. Mediation is confidential and private. No participant in the mediation process or any portion thereof may communicate confidential information acquired during mediation without the consent of the disclosing party. There shall be no stenographic or electronic recording, *e.g.*, audio or visual, of the mediation process.

1. All written and oral communications made in connection with or during the mediation session, any positions taken and any views of the merits of the case formed by any participant, including parties, counsel and the Mediator, are privileged and confidential.

2. There shall be no communication between the assigned Judge or designated Magistrate Judge and the Mediator regarding a case referred for mediation.

3. No communication made in connection with or during any mediation session may be disclosed or used for any purpose including impeachment in any pending or future proceeding in the Court.

4. The confidentiality of information disclosed during mediation does not prohibit or limit:

14

(a) the Court from collecting information relative to evaluation of the ADR program;

(b) the Mediator from reporting a failure to participate in the ADR process in good faith, except that the Mediator shall not disclose the content of confidential communications;

[c]  the Mediator from filing "Mediation Certification" forms pursuant to 5.11;

[d] a party from seeking to enforce a settlement agreement;

[e] a party from disclosing the final resolution and settlement reached unless, in the interest of justice, the parties have agreed to the confidentiality of same; or

(f) a participant from making such disclosures as are required by law.

## 5.11   CONTINUED MEDIATION AND REPORTS

**A.**  At the close of the initial mediation session, the Mediator and the parties shall jointly determine whether it would be appropriate and helpful to  then schedule additional mediation.  Follow-up could include, without limitation,  written reports, telephonic discussions, negotiations between the parties with the Mediator available for assistance, or further mediation sessions.

**B.**  Within seven (7) days after the close of each mediation session, and on the form "Mediation Certification" provided by the Court, the Mediator shall report to the Court the date the session was held, whether the case settled in whole or in part and whether any follow up is scheduled.  The Mediation Certification shall be filed.

15

## ACKNOWLEDGMENTS

The Court acknowledges and thanks its committee members, who devoted countless hours to the development of this Plan over two and one-half years, and the Federal Judicial Center for the ADR consultation, resources and statistics it provided.  In developing this Plan, the Court and its committee reviewed numerous federal and state court ADR programs nationwide and incorporated a multitude of recommendations and comments proffered by various members of local and federal bar associations and their select committees.  Additionally, the Court extensively researched and studied the ethical implications for its program mediators. In doing so, the Court was particularly impressed with the comprehensiveness and reasonableness of the various principles enunciated and addressed in the proposed conflict of interest rules for arbitrators, mediators and other third-party neutrals currently under consideration for adoption in the State of New York and the CPR-Georgetown Commission on Ethics and Standards in ADR's "Proposed Model Rule of Professional Conduct for the Lawyer as Third Party Neutral."

In addition, the Court acknowledges the mediators, the litigants, and their counsel, who have prepared for and fully participated in ADR from the Plan's inception. Their thoughtful and open-minded engagement in the process has ensured the Plan's success.

16



**GOLDBERG SEGALLA**LLP

**Daniel B. Moar** | Attorney at Law
Direct 716.844.3416 | dmoar@goldbergsegalla.com

October 26, 2011

Keon A. Hart
#08-B-1749
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York  13403

      **Re:   1:07-cv-06607-RJA-HBS
      LEGAL MAIL**

Dear Mr. Hart:

    Please be advised that I have been relieved as counsel in this matter and therefore cannot provide you with any legal advice.  A copy of Magistrate Scott's June 17, 2011 Text Order is enclosed.

        Very Truly Yours,

        *Daniel B. Moar*

        Daniel B. Moar

DBM/jbw

792721.1

| 06/17/2011 | 55 | **ORDER OF MAGISTRATE JUDGE HUGH B. SCOTT** |
| --- | --- | --- |
| | | **TEXT OF THE ORDER** |
| | | By letter dated June 1, 2011 (attached), Daniel B. Moar, Esq. has advised the Court that he has a conflict which precludes his continued participation in this case. Mr. Moar is relieved as counsel for the plaintiff in this matter. The status conference set for June 17, 2011 is adjourned and will be rescheduled upon the appointment of new counsel. |
| | | So Ordered. |
| | | Signed by Hon. Hugh B. Scott on 6/17/2011. (JRA) (Entered: 06/17/2011) |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Keon Hart,

                         Plaintiff,

                                              **Hon. Hugh B. Scott**


                                              07CV6607A

          v.

                                              **Order**


Capt. Officer Michael McCarthy et al.,
                         Defendants.

---

          John Abeel, Esq. and Jennifer Beckage, Esq, previously appointed as counsel for the

plaintiff in this matter, are relieved as counsel due to a potential conflict relating to their law

firm's representation of other clients. The Court appoints **Daniel Moar, Esq.** as counsel for the

plaintiff, *pro bono*, pursuant to 28 U.S.C. § 1915(d). Hodge v. Police Officers, 802 F.2d 58 (2d

Cir. 1986), Cooper v. A. Sargenti Co., 877 F.2d 170 (2d Cir. 1989).

          The Clerk of the Court is directed to provide a PACER exemption to allow plaintiff's

counsel to have free access to the electronically filed documents for this specific case. A status

conference will be held with counsel on **June 17, 2011 at 2:00 p.m.** at 414 U.S. Courthouse, 68

Court Street, Buffalo, New York, to discuss the status and scheduling of this matter.

          So Ordered.


                                        /s/ Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
May 27, 2011


                                        1



**Phillips Lytle LLP**

**VIA CERTIFIED MAIL**                                                                 May 27, 2011

Wende Correctional Facility
Attn: Mr. Keon Hart (08-B-1749)
3040 Wende Road
Alden, New York 14004-1187

Re:    Hart v. McCarthy

Dear Mr. Hart:

Please be advised that our firm has a conflict of interest in representing you in the
above-referenced action. Enclosed is a copy of the Order of the Court relieving us as
counsel due to the conflict.

Respectfully submitted,

Phillips Lytle LLP

By    *Jennifer A. Beckage*

Jennifer A. Beckage, Esq.

JAB4/sab3

cc:    John Abeel, Esq.
Enclosure

Doc # 01-2471704.1

**Jennifer A. Beckage**
Direct 716 847 7093  jbeckage@phillipslytle.com
ATTORNEYS AT LAW

3400 HSBC CENTER  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100
BUFFALO  ALBANY  CHAUTAUQUA  GARDEN CITY  NEW YORK  ROCHESTER  WWW.PHILLIPSLYTLE.COM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Keon Hart,

                              Plaintiff,

                                                    **Hon. Hugh B. Scott**


                                                    07CV6607A

                    v.
                                                    **Order**


Capt. Officer Michael McCarthy et al.,
                              Defendants.

_____

        The plaintiff has filed motions seeking appointment of counsel (Docket Nos. 49 and 50).

Upon review of the facts and circumstances presented in this case, the Court finds that the

appointment of counsel is warranted. The Court appoints **John Abeel, Esq. and Jennifer**

**Beckage, Esq.** as counsel for the plaintiff, *pro bono*, pursuant to 28 U.S.C. § 1915(d). Hodge v.

Police Officers, 802 F.2d 58 (2d Cir. 1986), Cooper v. A. Sargenti Co., 877 F.2d 170 (2d Cir.

1989).

        The Clerk of the Court is directed to provide a PACER exemption to allow plaintiff's

counsel to have free access to the electronically filed documents for this specific case. A status

conference will be held with counsel on **May 31, 2011 at 2:15 p.m.** at 414 U.S. Courthouse, 68

Court Street, Buffalo, New York, to discuss the status and scheduling of this matter.

        So Ordered.


                                        /s/ Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
April 26, 2011


                                        1

**Other Orders/Judgments**

6:07-cv-06607-RJA Hart v. McCarthy et al **CASE CLOSED on 10/08/2010**
CLOSED_2010, HBS, ProSe

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 10/13/2010 at 10:28 AM EDT and filed on 10/13/2010
**Case Name:**      Hart v. McCarthy et al
**Case Number:**      6:07-cv-06607-RJA-JJM
**Filer:**
**WARNING: CASE CLOSED on 10/08/2010**
**Document Number:** 48(No document attached)

**Docket Text:**
**TEXT ORDER REFERRING CASE to Magistrate Judge Hon. Jeremiah J. McCarthy The
Magistrate Judge is hereby designated to act in this case as follows: Pursuant to 28 U.S.C.
Section 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named
United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling
conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and
disposition of all non-dispositive motions or applications, (3) supervision of discovery, and
(4) supervision of all procedural matters involving the aforementioned or involving the
preparation of the case or any matter therein for consideration by the District Judge. The
Magistrate Judge shall also hear and report upon dispositive motions for the consideration of
the District Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and (C). All motions or
applications shall be filed with the Clerk and made returnable before the Magistrate Judge.
The parties are encouraged to consider the provisions of 28 U.S.C. Section 636(c) governing
consent to either partial or complete disposition of the case, including trial if necessary, by
the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or
the office of the Clerk of Court. IT IS SO ORDERED.. Signed by Hon. Richard J. Arcara on
10/13/2010. (JMB)**

**6:07-cv-06607-RJA-JJM Notice has been electronically mailed to:**

Carmen J. Gentile cgentile@ch.ci.buffalo.ny.us, cmiller@city-buffalo.com, dmalican@city-buffalo.com,
drodriguez@city-buffalo.com, lawmaster@city-buffalo.com, rquinn@city-buffalo.com

**6:07-cv-06607-RJA-JJM Notice has been delivered by other means to:**

Keon A. Hart
08-B-1749
CENTRAL NEW YORK PSYCHIATRIC CENTER
P.O. Box 300
Marcy, NY 13404

**Other Orders/Judgments**
1:07-cv-06607-RJA Hart v. McCarthy et al
HBS, ProSe

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 10/13/2010 at 11:58 AM EDT and filed on 10/13/2010

**Docket Text:**
**TEXT ORDER REFERRING CASE to Magistrate Judge Hon. Hugh B. Scott The Magistrate Judge is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall also hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and (C). All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. Section 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED.. Signed by Hon. Richard J. Arcara on 10/13/2010. (JMB)**

**1:07-cv-06607-RJA-HBS Notice has been electronically mailed to:**

Carmen J. Gentile cgentile@ch.ci.buffalo.ny.us, cmiller@city-buffalo.com, dmalican@city-buffalo.com, drodriguez@city-buffalo.com, lawmaster@city-buffalo.com, rquinn@city-buffalo.com

**1:07-cv-06607-RJA-HBS Notice has been delivered by other means to:**

Keon A. Hart
08-B-1749
CENTRAL NEW YORK PSYCHIATRIC CENTER
P.O. Box 300
Marcy, NY 13404

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

304 U.S. Courthouse
68 Court Street
Buffalo, New York 14202
(716) 551-5759



www.nywd.uscourts.gov

2120 U.S. Courthouse
100 State Street
Rochester, New York 14614
(585) 613-4000

H. LISA REAGAN, ESQ..
ROBERT A. KLUMP, ESQ.
BETSY STERLING, ESQ.
Pro Se Staff Attorneys

MICHAEL J. ROEMER, ESQ.
CLERK OF THE COURT

CHARLES S. CARRA, ESQ.
SENIOR PRO SE STAFF ATTORNEY

SUSAN S. KELLOGG
Pro Se Writ Clerk

March 7, 2011

Keon A. Hart
Wende Correctional Facility
P.O.Box 1187
Alden, NY 14004-1187

Re: Hart v. McCarthy, 07-CV-6607A(JJM)

Dear Mr. Hart:

Pursuant to your recent letter, dated February 23, 2011, and received on February 28, 2011, I enclose a Magistrate Judge Consent Form.

Very truly yours,

Charles S. Carra
Senior Pro Se Staff Attorney

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

304 U.S. Courthouse
68 Court Street
Buffalo, New York 14202
(716) 551-5759

2120 U.S. Courthouse
100 State Street
Rochester, New York 14614
(585) 613-4000

www.nywd.uscourts.gov

H. LISA REAGAN, ESQ..
ROBERT A. KLUMP, ESQ.
BETSY STERLING, ESQ.
Pro Se Staff Attorneys

MICHAEL J. ROEMER, ESQ.
CLERK OF THE COURT

CHARLES S. CARRA, ESQ.
SENIOR PRO SE STAFF ATTORNEY

SUSAN S. KELLOGG
Pro Se Writ Clerk

February 18, 2011

Keon A. Hart, 08-B-1749
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004-1187

Re: Hart v. McCarthy, 07-CV-6607A(Sc)

Dear Mr. Hart:

Your correspondence relating to the above-referenced case was received by this office on February 17, 2011.

You have inquired about the status of this matter and your pending motions. I enclose a copy of the docket sheet in this matter, which notes that on October 7, 2010, this case was transferred to the Buffalo Division of the Western District of New York (Docket No. 46-47), and on October 13, 2010, Judge Arcara, to whom the case has been assigned to in Buffalo, referred this matter to Magistrate Judge Scott, pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) for all pre-trial proceedings, including reporting on dispositive motions. I also note that you have two additional motions for the appointment of counsel pending. The court will issue a determination on those motions in due course.

I also enclose, pursuant to your request, a consent form.

Very truly yours,

Charles S. Carra
Senior Pro Se Staff Attorney

enc.

TO: UNITED STATES POSTAL OFFICE
475 L'ENFANT PLAZA, S.W., RM 600M
WASHINGTON, D.C. 20436-0250

CORPUS
JURIS
SECUNDUM
august 1st, 2013
11:59 P.M.

FM: KEON HART   DIN # 08-B-1749
MID-STATE CORRECTIONAL FACILITY
POST OFFICE BOX 2500
MARCY, NEW YORK 13043-2500

Date: July 22ND ®, 2013

Re: FREEDOM OF INFORMATION LAW REQUEST

Records Officer,
    PLEASE TAKE NOTICE, that pursuant to New York Public Officer's Law,
Article 6; § 84 et seq., a request is hereby made to produce the records
for inspection and/or copying as follows:

DELEGATIONS RELATED TO - ALL RIGHTS
RESERVED - UNDER "SECTION 2672 OF TITLE
28, UNITED STATES CODE" ON BEHALF
OF THIS REQUESTOR, (42 USCA 233) OR/AND
(5 USCA 8477), UP TO THE PRESENT INCLUDED
APPROPRIATIONS ENTITLED. APRIL 22ND 1980 ®

    Pursuant to Public Officer's Law, Article 6, § 89(3), you have five
business days from the reciept of this request to comply or respond in
writing, setting forth a date when the requestor may expect reciept of
the requested records. Failure to timely comply or respond will be deemed
a denial of this request.

    If there are any charging fees or copying costs, please inform this
requestor of the amount of pages and cost of each page.

    If for any reason any part of this request is denied, please inform
this requestor in writing the reason(s) for said denial, and to whom and
where an appeal should be sent.

    Thank you for your assistance.

SS# 13106608445   ®

cc: file
Patrick R. Donahoe, C.E.O.
James Friedman, Esq.

Department of Treasury
John M. Brown, Operations MG
New York Metro Law Offic

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
*11* for the *12*

### Western District of New York

| | | |
|---|---|---|
| KEON A. HART, | ) | |
| *Plaintiff* | ) | |
| *10* v. *11* | ) | Civil Action No.   12cv6561CJS |
| BRANDON SMITH, ET AL., | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

☐ the plaintiff *(name)* *Barry L. Radlin, ESQ. ADR* recover from the defendant *(name)* *Department of TREASURY* the amount of *five BILLION* dollars ($5,000,000,000.00) which includes prejudgment interest at the rate of *150* %, plus postjudgment interest at the rate of *1.5* %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* *Keon Hart* *OB-B-1749* recover costs from the plaintiff *(name)* *c/o SELTON*

☑ other: *MID-STATE 9005 OLD RIVER RoaD Box 2160, ALBANY 12226*

This action was *(check one):*

☐ tried by a jury with Judge *Daniel Patrick Moynihan* presiding, and the jury has rendered a verdict.

☐ tried by Judge *Keon Askeea Hart* without a jury and the above decision was reached.

X  decided by Judge    Charles J. Siragusa    on a motion for   N/A *12 V.11*
Petition is dismissed as time-barred under 28:2244(d)(1).

Date:    Dec 3, 2012                    CLERK OF COURT

                                        s/Michael J. Roemer

                                        *Signature of Clerk or Deputy Clerk*

**Other Orders/Judgments**
6:12-cv-06561-CJS-JWF Hart v.
Smith **CASE CLOSED on
11/30/2012**

CLOSED,HABEAS,JWF,ProSe

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 12/3/2012 at 2:10 PM EST and filed on 12/3/2012
**Case Name:**        Hart v. Smith
**Case Number:**      6:12-cv-06561-CJS-JWF
**Filer:**
**WARNING: CASE CLOSED on 11/30/2012**
**Document Number:** 6

**Docket Text:**
**JUDGMENT dismissing petition. Signed by Clerk of Court on 11/30/2012. (TA)**

**6:12-cv-06561-CJS-JWF Notice has been electronically mailed to:**

**6:12-cv-06561-CJS-JWF Notice has been delivered by other means to:**

Keon A. Hart
08-B-1749
MID-STATE CORRECTIONAL FACILITY
Box 2500
Marcy, NY 13403

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=12/3/2012] [FileNumber=2329153-0
] [566c2cf18962f19ed1191ea312241ec3b541c3be5d80c1e255627fdf1c554b31e30
2bcb42e09600c65dda6478e701866f32120a81b7bf92d76a1ddad71889a60]]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEON HART (08-B-1749),

                    Plaintiff,

       -v-

OFFICER MICHAEL McCARTHY,
OFFICER M. WHITE, OFFICER
S. ALVAREZ, OFFICER T. DOLAN,
OFFICER J. MAYHOOK AND
OFFICER E. PERRIN,

                  Defendants.

FIRST AMENDED
VIDEO CONFERENCE
ORDER
07-CV-6607

---

The Court will hold a video conference in the above-captioned matter on June 3, 2010  to conduct a status conference, accordingly

IT HEREBY IS ORDERED that a status conference will be held on **June 3,  2010 at 2:15 p.m.**  and conducted **VIA VIDEO CONFERENCE**.  It is requested that the plaintiff be given permission to have his legal papers relative to this action available at the time of the video conference call.

FURTHER, that failure by any party or counsel for a party to prepare in good faith for this hearing in accordance with this order, and any party's or counsel's failure or refusal to attend or take part in this conference, may be sanctioned by the Court as provided by the Federal Rules of Civil Procedure, including the dismissal of the case with prejudice or judgment for the plaintiff.

SO ORDERED.

Dated:  May 6, 2010
         Rochester, New York

                               */s/ Charles J. Siragusa*
                                CHARLES J.  SIRAGUSA
                                United States District Judge

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
### ROCHESTER, NEW YORK 14614-1363

**CHARLES J. SIRAGUSA**
DISTRICT COURT JUDGE

585-613-4050
FAX-613-4055

May 6, 2010

Mr. Keon Hart, #08-B-1749
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13404

     **RE:   Keon A. Hart v. Capt. Officer Michael McCarthy, et al**
           **Docket No. 07-CV-6607**

Dear Mr. Hart:

    The Court is in receipt of your letter dated April 7, 2010 which we received on April 20, 2010. It is our understanding, pursuant to your counselor, Mike Fontana, that you are able to go forward with the status conference (by video conference) in the above matter. The status conference has been rescheduled and will be held on June 3, 2010 at 2:15 p.m. Enclosed you will find a copy of the Court's First Amended Video Conference Order.

                      Very truly yours,

                      Charles J. Siragusa
                      United States District Judge

CJS/kja
Enc.
xc: Carmen J. Gentile, Esq. (w/enclosure)

**UNITED STATES DISTRICT COURT**
WESTERN DISTRICT OF NEW YORK
ROCHESTER, NEW YORK 14614-1363

CHARLES J. SIRAGUSA                                          585-613-4050
DISTRICT COURT JUDGE                                         FAX-613-4055

May 18, 2010

Mr. Keon Hart, #08-B-1749
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13404

      RE:    **Keon A. Hart v. Capt. Officer Michael McCarthy, et al**
               **Docket No. 07-CV-6607**

Dear Mr. Hart:

      The Court received from you this date it's original letter to you dated May 6, 2010, with enclosed First amended Video Conference Order, with no explanation as to why you returned the letter and Order to the Court.  Please note that a status conference will be held with you (by video conference) and Mr. Gentile on June 3, 2010 at 2.15 p.m.  **YOUR FAILURE TO ATTEND THE CONFERENCE MAY RESULT IN DISMISSAL OF THE CASE.**

      Enclosed you will find a copy of the Court's letter, dated May 6, 2010, together with a copy of the First Amended Video Conference Order.

                        Very truly yours,

                        Charles J. Siragusa
                        United States District Judge

CJS/kja
Enclosures
xc: Carmen J. Gentile, Esq.

PRO SE OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**100 FEDERAL PLAZA**
**CENTRAL ISLIP, NY 11722**
(631) 712-6060

US DISTRICT COURT E.D.N.Y.

★ OCT 0 7 2013 ★

BROOKLYN OFFICE

Date: _9-25-13_

Re: _enclosure_

Dear *pro se* litigant:

The enclosed _papers_ is/ are being returned without docketing or consideration for the following reason(s):

( ) The docket number and judge's initials are missing.

( ) Your signature is required on all papers filed with the Court. Please sign wherever an "X" appears.

( ) These papers appear to be intended for another court or agency.

( ) Papers cannot be filed without indicating that they have been served on all parties in your action, or their attorneys. This office *will not* forward copies of your papers to other parties or their counsel. An Affirmation of Service form is enclosed.

(✓) Your papers do not meet the minimum requirements for:

　　( ) Legibility: please type or print clearly.
　　( ) Language: only English is acceptable.
　　(✓) Form or Content: See forms/instructions enclosed.
　　( ) Please indicate the documents you served on your affirmation of service.
　　( ) Other:

( ) This Court will only accept papers on 81/2 by 11 paper. Note that this does not include exhibits.

( ) Pursuant to Local Civil Rules 5.1, discovery materials are not filed with the Court except by Order of the Court.

( ) Your Notice of Appeal has been processed, and your case is closed. Your papers should be directed to:

　　United States Court of Appeals for the Second Circuit
　　Thurgood Marshall U. S. Courthouse
　　40 Foley Square
　　New York, NY 10007

( ) Our records indicate that you are represented by an attorney. As such, you may not file papers or communicate directly with the Court. Please refer this matter to your attorney.

(✓) The Court cannot act on your submission(s). To the extent that it is your intent to start a new action, or to file a motion, please see the enclosed form(s).

(✓) Other: _please choose, label & attach_
_exhibits._

*PRO SE* OFFICE
By: /s/ C.Vukovich